The case for argument is 20-1760, you vs. Apple. Mr. Litz, whenever you're ready. Good morning, Your Honors, and may it please the Court, Robert Litz on behalf of Appellant Jianbin Yu and Zhang Xuanzang. The application for the 289 patent was filed on January 15, 1999, more than 22 years ago. At that time, digital cameras were in the industry. And the patent expired in 2019, is that correct? Yes. Okay, thank you. Sorry to interrupt. At that time, digital cameras were in their infancy, and they simply produced low-quality images compared with traditional film cameras. And this was because of the technical limitations of image sensors that existed at that time. One possible solution was to simply use larger image sensors, but this would have simply introduced a whole host of additional problems. So, simply using larger image sensors was not an optimal solution. The inventors of the 289 patent, both of whom have doctorates in electrical engineering or related fields, realized all of this. And therefore, they set out on a more creative approach to solve these problems by developing an entirely new digital camera architecture and a new use of that architecture to produce digital images. And those efforts led to the development of the claimed invention of the 289 patent. Now, the 289 patent discloses and claims an improved digital camera that includes a specific and unconventional digital camera architecture and a specific and unconventional use of that digital camera architecture to produce a resultant digital image. This is Judge Toronto. Can I just ask this question? Is it a matter of dispute whether in the prior art there was a configuration or understood to be a possible configuration of two black and white sensors co-planar? I don't believe that issue has been raised. There are no references in the record that Okay. So that's all I can really speak to that. I guess part of what I was interested in, and I think this is in the red brief to some extent, quite a lot of the spec here is about a particular embodiment of three single-color sensors plus one black and white sensor. And it's possible that all the language about the key invention here is kind of about that. The claim language, do you agree, is broad enough to cover the arrangement? I described two sensors, both of them black and white, which I guess everybody agrees is the same as full color, oddly enough, but co-planar. And one of them is used to enhance in some undefined way the image from the other. That's actually a disclosed embodiment in the invention. Where's that? There is a two-sensor embodiment. That is exactly like you described. And let me give you the location of that. That is at appendix 27. What's the column and line number? At column 7, lines 36 to 46. Okay, thanks. Okay, so proceeding, the architecture itself includes first and second image sensors, where the second image sensor is sensitive to a full region of visible color spectrum, and the first and second image sensors are closely positioned with respect to a common plane. The architecture is used to produce a resultant digital image by capturing a first digital image using the first image sensor, capturing a second digital image using the second image sensor, which again is sensitive to a full region of visible color spectrum, and enhancing the first digital image with the second digital image. With this claim combination of limitations, the improved digital camera, the 289 patent, was able to produce high-quality and film-like true-color digital images. And this was something that prior digital cameras simply could not do at that time. But this presented an improvement over prior multi-sensor cameras because prior multi-sensor cameras used prisms to split light into distinct bands so that the image sensors did not have to be close to one another, whereas the invention of the 289 patent uses image sensors that are closely positioned with respect to a common plane. Also, prior multi-sensor cameras captured images representing only a distinct region of the visible light spectrum, such as a red image, a green image, and a blue image separately, and merely combined those images to form a color image, whereas the 289 patent captures at least one image representing a full region in the visible light spectrum and uses that image to enhance another captured image. This was not done with prior multi-sensor digital cameras. Now, the architecture is important to the claimed invention because using image sensors that are closely positioned with respect to a common plane allows separate images of the same target to be captured without using prisms. And using an image sensor that sets it to a full region of visible color spectrum is important because it allows information that may have been missed by the first image sensor to be captured by the second image sensor and used to improve the quality of the image captured by the first image sensor. Returning to the Alice Mayo test for patent eligibility, the district court wrongly found under Step 1 that the claims of the 289 patent are merely directed to the abstract idea of taking two pictures and using those pictures to enhance each other in some way. This is an egregious oversimplification of the claim, and it runs afoul of this court's admonition that we must therefore ensure at Step 1 that we articulate what the claims are directed to with enough specificity to ensure that the Step 1 inquiry is meaningful. The district court's characterization completely ignores all the structural limitations of the claims, and it doesn't consider the structural limitations of the claims in combination with the image enhancement limitation. It would even cover single-sensor digital cameras, in fact, that performed image enhancement. So this was clearly an overbroad and erroneous characterization of the claims. The claims are not really directed to using one picture to enhance another, but rather they're directed to the specific and unconventional digital camera architecture recited in the claims and the specific and unconventional use of that architecture to produce a resultant digital image. One of the problems, at least speaking for myself, that we often have in these 101 cases is that in the old pre-Mayo world, the patent bar thought that it was enough to simply say the complete combination of all the claim elements. And Mayo says stop doing that. Talk in specifics about what's going on in the claim and the traditional way of... So can you do that here? Instead of just referring to the complete arrangement of the configuration in the claims, indicate what is it about this configuration that is a departure from previous ways from the prior art. Sure. Well, the most conventional way at that time, back in 1999, was to simply use a single image sensor. So multi-sensor cameras themselves I don't think could be truly called conventional at that time. But even with regard to multi-sensor cameras, they did not use image sensors that are closely positioned with respect to a common plane, and they did not use image sensors that are... that are roughly speaking coplanar, or does it mean something else? I didn't see in the brief anybody saying, here's what it means to be closely positioned with respect to a common plane. Well, the specification does give guidance as to what that means. So most particularly with regard to figures 4A and 4B, where it shows sort of example configurations, and the specification also states that the close positioning of the image sensors allows the images to be registered without excessive computational requirements. So another party has alleged that claim construction has bearing on the outcome of the proceeding. No, but if we're trying actually to generate in our minds a picture of what's going on, a little understand explanation would be helpful. Sure. The best way I think to understand the closely positioned limitation is that... simply that they are close to one another, as opposed to not necessarily being close to a common plane, but close to one another. And as the specification explains, so that they can capture images of the same target. And so that the images can be registered with one another. To visualize it, I would say looking at the sensors from a front-on perspective, from the standpoint of the image target, they have to be close to another, and close enough so that the same target can be captured with the multiple sensors. Okay, thanks. And are close enough so that the registration process can be not computationally to extent... I guess require too many resources, computational resources. Right, got it. Now, I see I'm into my rebuttal time, so I'll just proceed quickly through a couple issues relating to prong one. Now, the claimed invention clearly improves the functionality and capabilities of digital cameras. It enables them to produce digital images better than prior digital cameras. And producing digital images is the main function of a digital camera. So, this is a clear case where the invention improves the functionality of the claimed system. Also, the problems described in the 289 patent specifications being solved by the invention... are clearly technical problems relating to the limitations of then existing image sensors. So, those problems included things like limited resolution, due to low pixel counts, inability to show vivid colors by limited pixel depth, and inability to show details of a large... This is Judge Taranto. I'm sorry to eat up more time. Does the word enhance, or then the limitation of which it is a part, have any meaning in the claim? Or are you saying that if you create the configuration, the structural, if you have something that satisfies the structural elements of the claim, it will automatically meet that enhanced limitation? Or does enhanced actually mean something additional? Enhanced means using information from the second image to improve the first image. So, the first image is going to be changed or modified in some way using information from the second image. Okay. With the idea that the image from the second sensor might capture information that was missed by the first sensor. It might be useful in improving the image from the first sensor. Okay. Thank you. And briefly under step two, I believe that where the district court ran most afoul of this court's admonitions is failing to consider the claimed combination. This court has held that the claimed combination of... Or that an inventive concept can be found not only in the individual limitations, but in the claimed combination of limitations. The district court not only ignored the claimed combination of structural limitations, but failed to consider that combination along with the enhanced limitation. And this court, or the Supreme Court, made clear in Diamond v. Deere that any abstract idea or mathematical formula that can be identified in the claim must be considered in determining the patent eligibility question. And that simply didn't happen at the district court. On the issue of preemption, there is clearly no danger of preemption here because there are forms of image enhancement using multiple captured digital images that would not infringe the claims. For example, using multiple images captured from the same image sensor would not infringe the claim. For example, if the images were captured in burst mode from the same sensor and then one was used to enhance the others, that would not be encompassed within the claims. Also, any enhancement using multiple image sensors where none of the image sensors are responsive to a full region of visible color spectrum would be encompassed by the claims. Or where the image sensors are not closely positioned with respect to a common plane, that likewise would not be encompassed by the claims. So the danger of preemption is vastly overstated by both the district court and by the appellees. And finally, the pleadings include numerous plausible factual allegations regarding the inventiveness of the claimed invention, improvements to digital camera functionality provided by the invention, the technical nature of the problems solved by the invention, unconventional aspects of the invention, and the lack of preemption. All of these allegations were improperly ignored and discounted by the district court as being merely conclusory. And this is not the case. They were all supported by extensive citations to and quotations from the intrinsic record, particularly the specifications. So failing to take into account those allegations was improper, and those allegations preclude dismissal at this stage of the proceedings. Thank you. We'll restore a couple minutes of rebuttal. Let's hear from the other side. Ms. Keefe. Thank you, Your Honors. May it please the Court. Heidi Keefe for appellees. I think what's really critical here, Your Honors, is what we actually just heard during the opening oral argument. We were told for the first time, it was admitted, that there is no enhancement simply by using the structure that is claimed in the claim. Instead, you need something more. And that's absolutely foundational to our allegation about 101. For example, I think one of the best ways to see this is every time that enhancement is discussed in the specification, it refers to a whole other step. For example, if we look to Appendix 28, Column 10, starting at Line 6 going through Line 16, it describes Figure 8, which says that in order to do the enhancement, you have to first have just normal pictures that come in from the two different sensors. And then you have to do a separate step of digital signal processing and then enhancement. Figure 8 has a separate box after you receive the images from these conventional sensors that are just, you know, use the ones that are cheap. Don't go create a new sensor. We also heard that during the opening argument. We're not going to build new sensors. We're just going to use the ones that already exist and try to do it in some inexpensive way, and that's replete at Columns 1 and 2. Once we get those images, we then have to perform digital image processing, but we're never told how. And then we have to enhance the image, and that's at Step 820 in Figure 8. But again, we're never told how. This is Judge Taranto. So this is, I guess, a little different from some of the other 101 cases we have, but help me see how your focus on the unexplained but nevertheless meaningful term enhancement plays into the 101 analysis, as opposed to saying either it hasn't been enabled or it's indefinite. Fit it into 101 analysis for me.  Thank you, Your Honor, for the question. What we have to do in 101 is we have to look to what is the claim directed to. What is the whole essentially gist of the claim? What's the purpose of the claim? And what we know here from the claim itself as well as from the specification is that the entire purpose, the entire invention, is to produce an enhanced image. We see that first in the abstract. And maybe I'm confused about this. I thought I heard your friend on the other side say, no, it cannot be said that if you take out the enhancement limitation that the rest of the structure, including just the simple fact of two lenses, one of which is responsive to a full range of color, that that structural arrangement with whatever it means to say close to whatever the relationship to the plane is, that that itself is not conventional. And if that's right, then that's part of the gist of this claim, no? So, Your Honor, what we heard was them trying to add something to the claim that doesn't exist there. Your Honor, ask the question, could the claim cover two standard black and white sensors? And the answer is not only could it, it must. The claim as written simply says that there are two sensors, one of which is sensitive to the full range of color, and it's silent to the other. Which everybody understands to mean black and white? That's correct, Your Honor, black and white. And it's easier if I just say it that way. So the claim one requires using one black and white sensor and it's silent to the other. Claim two says wherein the other sensor is also black and white. So we know that the independent claim has to cover a situation with two black and white sensors. We also know from the gray brief that the... So why isn't that an asserted advance as long as those two sensors are properly aligned? Because, Your Honor, we know from the intrinsic record that, in fact, closely aligning sensors is old. It's never been disputed that it was conventional in order to place things on a common plane. It's no different, for example, than your eyes being on a common plane and receiving two images, and that's something we discussed in the briefing down below. And the notion that the gray brief actually admits that each of the component parts is, in fact, conventional. And so what we know then, and that, by the way, is in the gray brief at page 12, we know, therefore, that each of the component parts is just being used in its normal, ordinary, conventional fashion to simply produce an image. There is nothing here that takes it out of the realm of the abstract, and it doesn't do anything new or different. And I don't mean those words. I apologize. I've used the word new. I don't mean those words in the novelty sense. I mean them in the take it out of the realm of the abstract. Here, the gist of the patent, the things that the claim is directed to, is not anything new about how you place the sensors. In fact, again, if we look to the specification itself, and this is replete through columns 1 and 2 in Appendix 24, we hear that we don't want to use new sensors. We want to use the old sensors so that we can get a better image without costing more money. And that's at column 2, for example, line 5. It's also at column 2, lines 20 through 21, lines 32 through 33, et cetera. So the claim is not directed to a new placement or a new combination of how these things are used. The claim itself just says make sure you've got two sensors that can both be black and white that receive data to create an image. And then the magic happens when you combine or enhance those images by using one image with another image. And what we heard during the opening argument was that the real thrust of the specification was if you use three sensors that are different from the fourth, you will be able to provide the missing data and therefore come up with an enhancement. But that's not how it was claimed. It wasn't claimed as one or three sensors that are completely different from the fourth, and therefore there will be a benefit because of providing missing data. That simply isn't how it's claimed. And in Alice, we have to look to how things are claimed. In that sense, this case is exactly like two-way media, where two-way media tried to get information from one place to another in multicasting sense. And it said, and I'm going to stick another computer in the middle so that that helps get the information from the source out to the recipient, and the thing in the middle is going to do the thing that figures it all out. Here, and in two-way media, I'm sorry, nowhere was it ever described how that happened or how that intervening computer or server was used in an unconventional way. Exactly the same thing here. Even though there is recitation of using black-and-white sensors, there is absolutely nothing that explains how that enhances an image until you use one image to enhance another, and that is nowhere described. Instead, that is – go ahead, Your Honor.  No, I don't think so. Please keep going. I apologize, Your Honor. I'm trying so hard to make sure I don't talk over you that I probably heard something else. Yeah, thank you. And so here, as in two-way media, we are never told how to effectuate the abstraction. Instead, we have only the black box of the digital signal processor in Figure 3, of the digital signal processing in Figure 8, and the enhanced image of 830 in Figure 8. Therefore, the case law tells us that this is just an abstract claim claiming the functional benefit of an enhanced image, nothing else. Nothing else. If Your Honors didn't have any other questions, the only other thing – Can I just, I think, return to a subject that we were discussing before? Can you point with some specificity to – I think you referred to the prosecution history, but the material that you rely on to say that putting aside the enhancement feature of the claim, the rest – not just the components, but their arrangement – is not plausibly asserted to be an advance? Yes, Your Honor. For example, we cite to the appendix file history where Nagano was recognized by the examiner as having multiple sensors that are placed closely with respect to a common plane. And that can be seen, for example, at Appendix 123. The figure itself shows that. This wasn't refuted in any way, shape, or form by the applicant. And I understand that it was a first-office action allowance. But they still, if they disbelieved that, could have submitted materials that said, and I do not believe that that's true, they did not do so. Similarly, they haven't disputed that below because Nagano actually says it, as do the other references that are cited in the file history. And that's, again, at Appendix, for example, 118. That leads me also to, Your Honor, one other question, which I think consistently we – I'm sorry. What in light of that do you make of a few passages in the specification, and since we are at 12B6, that matters, that seem to say, I don't know, the key to the advance here is this structural arrangement. So, Your Honor, I think, for example, the specification does talk about if you had completely different sensors. For example, if you had a red-green-blue sensor in combination with a black-and-white sensor, the specification makes hay of the fact that then you would be using the black-and-white sensor to potentially fill in information that was missed by the red, green, or blue sensor. That's what the specification talks about. That's not claimed, Your Honor, just the opposite. The claim simply says, have one black-and-white sensor, and claim two tells us, and make sure the other sensor is also black-and-white. Therefore, there is no other information that's being missed. There's no other information that you would necessarily come up with that could be even used to make the enhancement if you practice the claim as is. This is one of those cases where you have to look very carefully to exactly what is claimed, not to what the specification describes as an embodiment that is not claimed. In that sense, Your Honor, this case is very similar to Burkheimer. In Burkheimer, as Your Honors well know, there was the independent claims and the dependent claims. The independent claims simply claimed the memory and storing information. That was found to be ineligible, even though the specification specifically also disclosed embodiments that were claimed in the dependent claims that said, don't store redundant data. Well, if you didn't store the redundant data, then it could speed up the system and somehow make that, therefore, eligible. That shows us that it's not just within the specification. It's what's claimed that matters. So even though the specification may have had something that if claimed, and we don't know if they could have or what it would have been, but it wasn't claimed. Therefore, it's still ineligible. Does that answer Your Honor's question? Thank you for that, yes. Thank you very much, Your Honor. And in that sense, this case also is not like Thales, where the simple usage of the two sensors placed in different places inherently produced the benefit. Nor is it like McGrow, where the claim gave the specificity of how to achieve the improved image. Here, we have no idea how to achieve the improved image. And, in fact, we have no idea what the information even is that's going to be combined. And with that, Your Honors, unless you have other questions. Well, can I just ask you, Ms. Keefe, just another housekeeping question, which is there are two IPRs concerning this patent. Am I correct? That's correct, Your Honor. And how does that proceeding correspond to this one? So the PTAB decisions, there have been final written decisions where most of the claims were held to be not patentable. Those are in a stage for getting ready to come up on appeal. So this case is ahead of those. But not all of the claims, right? I forget which is it. Claim two is dependent. That's correct. That's exactly correct, Your Honor. All right. Thank you very much. Thank you, Your Honors, for your attention and time. Mr. Lips? Okay. I will just briefly address some of Apelli's points. The Apellis are, again, improperly focusing on individual claim limitations and not the claimed combination of limitations. What is nonconventional in the claims is the claimed combination of the structural components and the claimed use of those components to produce a resultant digital image. That is not something that the Apellis have addressed. Also, this is not a process claim. This is an apparatus claim that discloses details of a specific and unconventional digital camera architecture. Those details are themselves patent eligible. The Apellis are suggesting that an apparatus claim is more susceptible to attack under Section 101 than a process claim because the apparatus claim is going to include the type of process steps that would be included in a process claim. But the structure itself is patent eligible. And certainly the combination of the structure with the image enhancement is patent eligible. So the continued disregard for the combination of structural limitations in the claim is erroneous. Also, with regard to Berkheimer, that case is simply irrelevant. And also are a number of the other cases that Apellis have relied on in the briefing because there's no purportedly unconventional architecture of components in those cases. That's a common theme throughout those cases as opposed to the present case where we have a specific architecture. This is just Toronto. Can I just ask you, can you address Nagumo, which was addressed by what was one basis for a rejection in the prosecution history at 117? Putting aside the enhancement limitation, does that not show at least one arrangement that falls within Claim 1? No. The examiner found that that reference did not disclose an image sensitive to a full region of visible color spectrum. And actually the reason why the claims were found allowable was for that reason. It wasn't because of image enhancement. It was because of the failure of any of the references to disclose an image sensor that's sensitive to a full region of visible color spectrum. With regard to closing position with respect to a common plane, that reference shows schematics. And appellants believe that just showing schematics without any sort of description of sensor placement, anything more detailed than schematics, is not sufficient. So we have not conceded anything with regards to that reference. And as Counsel for Appellees pointed out, the claims were allowed on the first office action, so there's no need to respond to that finding. But that has not been conceded. Thank you. We thank both parties and the cases submitted. That concludes our proceeding for this morning. Thank you all. The Honorable Court is adjourned until tomorrow morning at 10 a.m.